USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___2/18/2026___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIANNA TOOMEY,

                              Plaintiff,

          -against-

ONE EQUITY PARTNERS,

                              Defendant.

24-CV-04088 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiff Dianna Toomey ("Toomey") alleges numerous instances of hateful comments and disparaging treatment from her co-workers, and indifference to this treatment from supervisors, ultimately resulting in her termination as an executive assistant at Defendant One Equity Partners ("OEP").  Toomey alleges this conduct constituted, *inter alia*, sex discrimination in violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").  Before the Court now is OEP's motion to dismiss Toomey's sex-discrimination claims and compel arbitration of her remaining claims under a provision of Toomey's employment contract.  For the following reasons, the motion is DENIED.

**BACKGROUND**

I.      **RELEVANT FACTS**[1]

Toomey "is a woman of Lebanese Arab descent" who joined OEP as an executive assistant or "EA" in 2022 and worked in its Manhattan office.  Compl. ¶¶ 1, 17, 27.  When

---

[1] The following facts are taken from the Complaint (referred to as "Compl." in citations) and assumed true solely for purposes of resolving the motion.  The Court shall refer to the parties' memoranda of law in support of and opposition to the motion to dismiss and compel arbitration as follows:  Dkt. No. 10 ("Mot."); Dkt. No. 14 ("Opp."); and Dkt. No. 16-1 ("Reply").

Toomey joined the firm, OEP's employees included then-President Dick Cashin, Head of Investor Relations David Lippin, Chief Operating Officer Dora Stojka, Vice-President of Investor Relations Grace Ma, and executive assistants Maureen O'Connell and Kim Porreca, among others. *Id.* ¶¶ 2, 6, 28. Later in Toomey's tenure, a man named Greg Belinfanti replaced Cashin as OEP's president. *Id.* ¶ 2.

Toomey alleges a culture of sexism permeated OEP. As examples, she cites an instance of former-President Cashin commenting at a work event that he preferred to hire women for "unintellectual jobs" like Toomey's rather than for intellectually challenging roles, and that men outperform women in "real schools." *Id.* ¶ 2. At a separate work event where cupcakes were served, Cashin asked a group: "Don't we prefer a thin [O'Connell] over a fat [O'Connell]?" *Id.* Toomey alleges that Cashin's replacement Belinfanti was "also a misogynist" who refused to be alone with a woman because it was "an invitation to a lawsuit" and would forbid women from advancing a certain distance into his office unless others were present. *Id.* ¶¶ 125–27. Belinfanti also once left a junior female staffer without a ride because "he would not be in a car with a woman." *Id.* ¶ 128. Toomey seemingly learned of these incidents second-hand. As for first-hand observations or experiences, she alleges that Cashin would periodically ask her, "don't we prefer skinny EAs over fat EAs?" and would sometimes "stand by Toomey's desk, place his hand firmly on her shoulder, and say, 'Dianna, David [Lippin] thinks you are great and doing such a good job. So glad you are here with us!'" *Id.* ¶¶ 2, 66. Toomey alleges that the "unwanted physical contact made her dread interactions with Cashin, as they created an environment where personal boundaries were not respected." *Id.* ¶ 67.

Additionally, Toomey's complaint outlines a pattern of abuse and bullying she faced at the hands of her fellow executive assistants O'Connell and Porreca. Porreca would prevent

2

Toomey from participating in planning company events, which was supposed to be part of Toomey's job duties. *Id.* ¶¶ 33–39. The two women would often make disrespectful comments concerning Toomey's appearance, at one point commenting that Toomey had very dark eyebrows, which Toomey contends plays on "racial stereotypes." *Id.* ¶¶ 55–58. And O'Connell made frequent derogatory, rude, and threatening comments to or about Toomey. She purportedly "described Arab-Americans as 'cheap' and 'disgusting,'" called Toomey a "bitch," and referred to her as a "dirty terrorist." *Id.* ¶ 2. O'Connell described Lebanese food as "disgusting like the people" and "terrorist food." *Id.* She also threatened Toomey, stating: "Mind your business, bitch" and "I'll beat the shit out of you, stupid Arab." *Id.* ¶ 47.

O'Connell and Porreca's cruel and targeted treatment of Toomey understandably caused her considerable distress, prompting her to raise the harassment to management. She first went to Lippin. *Id.* ¶ 44. When he did nothing, she raised it to Ma. *Id.* ¶¶ 130–31. Ma purportedly told Toomey not to raise the problem with Stojka because O'Connell was "protected" by OEP's president Belinfanti. *Id.* ¶ 135. Nevertheless, Toomey reported the harassment to Stojka, who promised to investigate. *Id.* ¶¶ 145–47. About a month later, Toomey followed up with Stojka, who then told Toomey that she should not show up to work on Monday as Toomey was "no longer a good fit." *Id.* ¶ 152, 155–56. Toomey was shocked by this statement, as she had received excellent performance reviews at OEP, as well as bonuses and thank-you gifts from her supervisors. *See id.* ¶¶ 77, 119, 157. During a later conversation, Stojka purportedly told Toomey she "would have had a long career with [OEP] if you would have just kept your head down and your mouth quiet." *Id.* ¶ 162.

## II.    PROCEDURAL HISTORY

Toomey commenced this action on May 29, 2024.  *See* Compl.  Her complaint brings claims under Section 1981, the NYCHRL, and the NYSHRL.  It alleges discrimination based on her race and national origin (Counts One, Four, and Seven), retaliation (Counts Two, Five, and Eight), and "sex discrimination/sexual harassment/hostile work environment" in violation of the NYSHRL and NYCHRL (Counts Three and Six).  *Id.* ¶¶ 168–208.  OEP moved to dismiss Counts Three and Six and compel arbitration of the remaining claims.  Dkt. No. 9.  OEP argues that Toomey does not properly allege she was treated worse on account of her sex and that her account of OEP's allegedly misogynistic culture came to her largely second-hand.  Mot. at 5–9.  OEP next argues that the Court should compel arbitration of the remaining claims because a valid arbitration agreement exists encompassing this action.  *Id.* at 12–15.  Toomey opposed the motion.  Dkt. No. 14.  She argues that Cashin subjected her to unwanted comments and touching and that OEP had a culture of degrading women "in which the conduct to which Toomey was subject rose to the level of sexual harassment."  Opp. at 6 (citing *Hernandez v. Kasman*, 103 A.D.3d 106 (1st Dep't 2012)).  She also alleges that the Ending Forced Arbitration Act ("EFAA") precludes enforcing the arbitration clause of her employment agreement because her complaint alleges sexual harassment under applicable state and local law.  *Id.* at 8–9.

### STANDARD OF REVIEW

## I.    RULE 12(B)(6) MOTIONS TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).[2] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. The Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."). However, the Court need not accept conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

## II.    MOTIONS TO COMPEL ARBITRATION

Under Section 2 of the Federal Arbitration Act ("FAA"), arbitration agreements are generally "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Where a party to an arbitration agreement refuses to comply with that agreement, and instead attempts to proceed in litigation, the other party may move to stay the litigation ... and compel arbitration." *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 240 (S.D.N.Y. 2020) (citing 9 U.S.C. §§ 3–4). The FAA establishes "a liberal federal policy favoring arbitration agreements." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 120 (2019) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA "leaves no place for the exercise of discretion by a

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

district court," instead mandating "arbitration on issues as to which an arbitration agreement has been signed." *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

In assessing the enforceability of an arbitration clause, courts must determine (1) whether the parties have entered into a valid agreement to arbitrate, and (2) whether the dispute at issue comes within the scope of the arbitration agreement. *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). The FAA requires courts to enforce arbitration agreements "according to their terms." *Id.* at 127 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479 (1989)). Any ambiguities as to the scope of the arbitration clause must be "resolved in favor of arbitration." *See Bechtel do Brasil Construcoes Ltda. v. UEG Araucaria Ltda.*, 638 F.3d 150, 155 (2d Cir. 2011) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25). Federal courts "apply ordinary state-law principles that govern the formation of contracts" in determining whether a valid agreement to arbitrate exists. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

**DISCUSSION**

OEP's motion presents two interconnected issues. First, does the EFAA apply to this matter? Second, has Toomey stated a claim for sex discrimination under the NYCHRL and NYSHRL? The Court addresses each issue in turn.

## I. OEP'S MOTION TO COMPEL ARBITRATION IS DENIED

The FAA establishes "a liberal federal policy favoring arbitration agreements." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 120 (2019) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24. Where a valid agreement to arbitrate a dispute exists, the FAA mandates that a court compel arbitration "on issues as to which an arbitration agreement has been signed." *Daly v.*

*Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

This case involves the application of the EFAA, which excludes "sexual harassment dispute[s]" and "sexual assault dispute[s]" from the otherwise-mandatory scope of the FAA. 9 U.S.C. § 402(a). The EFAA states:

> At the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

*Id.* The act defines a "sexual harassment dispute" as a "dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* § 401(4).

Toomey argues that the EFAA applies because her lawsuit involves a dispute "relating to conduct" that she alleges constitutes sexual harassment. Opp. at 8–9. OEP argues the EFAA does not apply because Toomey has failed to plausibly allege conduct that states a claim under an applicable law. Mot. at 11–15. It also argues that, even if Toomey has stated a claim for gender discrimination under NYSHRL or NYCHRL, the EFAA does not apply because the conduct Toomey describes in her complaint is not "sexual harassment" under any applicable law. Reply at 4, 8.

These arguments require the Court to address two threshold issues before determining whether the EFAA applies to this case. First, what standard should a court apply in analyzing claims that might trigger the EFAA? And second, what is required to allege "sexual harassment" under the NYCHRL?

7

### A. What Standard Should a Court Apply to Claims that Trigger the EFAA?

OEP argues that a plaintiff must *plausibly* allege claims of sexual harassment or sexual assault to invoke the EFAA and avoid otherwise-mandatory arbitration. Mot. at 11–15. Toomey responds that, based on the EFAA's plain text, it suffices that a plaintiff's complaint simply "relates to" a claim of sexual harassment or assault. Opp. at 8–9. The majority of precedent in this circuit accords with OEP's position. *See Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563 (S.D.N.Y. 2023); *Smith v. Meta Platforms, Inc.*, No. 24-CV-04633 (JPC), 2025 WL 2782484 (S.D.N.Y. Sept. 30, 2025). *But see Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498, 533–34 (S.D.N.Y. 2024) (holding that the EFAA merely requires a plaintiff to "plead nonfrivolous claims relating to sexual assault or to conduct alleged to constitute sexual harassment"). So, too, does the EFAA's text. The EFAA defines a "sexual harassment dispute" as a "dispute relating to conduct that is *alleged* to constitute sexual harassment *under* applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4) (emphasis added). Congress legislates with an awareness of "existing law," *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990), and applicable "judicial background," *Dekalb County Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 409–10 (2d Cir. 2016). Under existing law, a court determines whether a litigant "alleges" a cause of action "under" applicable law by applying the familiar standards espoused in *Twombly* and *Iqbal*.

Accordingly, the Court holds that to trigger the EFAA and bypass the otherwise applicable arbitration provision, Toomey must plausibly allege conduct constituting either sexual harassment or sexual assault under an applicable law, here the NYSHRL or NYCHRL, in a manner that can meet the *Twombly-Iqbal* standard.

### B. What is "Sexual Harassment" Under the NYCHRL?

That brings us to the next issue: What is "sexual harassment" under the NYCHRL? The NYCHRL contains no standalone sexual harassment provision separate from its general bar on

8

discrimination arising from sex or gender. *Clarke v. InterContinental Hotels Grp., PLC*, No. 12-CV-02671 (JPO), 2013 WL 2358596, at *11 (S.D.N.Y. May 30, 2013). But the EFAA exempts claims relating to sexual harassment and sexual assault, only. Therefore, courts applying the EFAA must attempt to tease out what it means to allege "sexual harassment" under the NYCHRL.[3] Judges in this district seem to agree that it involves unwanted, gender-based verbal or physical contact. But there has been less consensus about whether sexual harassment under these laws also requires conduct of a "romantic, sexual, or lewd" nature.

Judge Oetken in *Singh v. Meetup LLC* was the first to introduce this latter requirement to the EFAA case law in this district. 750 F. Supp. 3d 250 (S.D.N.Y. 2024). There, plaintiff Singh alleged that her employer subjected her to a hostile environment by systematically discounting her contributions, crediting male colleagues with her contributions, taking her ideas, and preferring male colleagues. *Id.* at 252–53. The defendant moved to compel arbitration, and Singh argued that the EFAA applied. *Id.* at 253. Judge Oetken analyzed provisions of the NYCHRL, canvassed agency guidance from the New York City Commission on Human Rights, and examined cases involving "sexual harassment" under the NYCHRL, reasoning that such cases usually involved "romantic, sexual, or lewd" conduct. *Id.* at 255–57. Judge Oetken then

---

[3] Admittedly, this exercise puts the federal courts in an awkward posture. As mentioned, there is no standalone sexual harassment provision of the NYCHRL. And, before passage of the EFAA, New York State courts chastised federal courts applying the NYCHRL that attempted to distinguish "sexual harassment" from the broader category of gender discrimination. In *Williams v. New York City Housing Authority*, for example, the First Department criticized a decision from this district for believing "that it is necessary to maintain the distinction that current federal law makes between non-harassment sex discrimination claims . . . and sex discrimination claims based on harassment." 61 A.D.3d 62, 75, 79 (1st Dep't 2009). *See also Suri v. Grey Global Group, Inc.*, 164 A.D.3d 108, 114 (1st Dep't 2018) ("In *Williams* we . . . dispensed with the need for much of the nomenclature that has accreted over the years in gender discrimination jurisprudence, such as 'sexual harassment' and 'quid pro quo,' and instead focused on the 'existence of differential treatment' in connection with 'unwanted gender-based conduct.'" (quoting *Williams*, 61 A.D.3d at 75)). Nevertheless, the plain text of the EFAA seemingly necessitates this exercise.

determined that—while Singh had plausibly alleged "gender discrimination"—she had not alleged "sexual harassment" as it had "been articulated in the NYCHRL, interpreted by the New York City Commission on Human Rights, and understood by state and federal courts" because she "has not adequately alleged 'unwelcome verbal or physical behavior' based on her gender." *Id.* at 258. Judge Oetken later denied reconsideration of his opinion, highlighting that Singh did not allege "sexual" or "lewd" conduct, which is required to separate sexual harassment from other types of gender discrimination. *See Singh v. Meetup LLC* ("*Singh II*"), No. 23-CV-09502 (JPO), 2024 WL 4635482, at \*2 (S.D.N.Y. Oct. 31, 2024).

Two other SDNY judges have since adopted, either implicitly or explicitly, the "romantic, sexual, or lewd" requirement from *Singh*. Judge Engelmayer in *Monnaus v. Columbia Management Investment Advisers* held that the EFAA did not apply because the conduct precipitating the NYCHRL lawsuit "lack[ed] the sexualized content required to constitute sexual harassment under the EFAA." 25-CV-02798 (PAE), 2025 WL 2503326, at \*7 (S.D.N.Y. Sept. 2, 2025). And Judge Cronan in *Smith v. Meta Platforms, Inc.* similarly reasoned that "regardless of the source of law, sexual harassment must be sexual in nature" on a plain-meaning rationale. 2025 WL 2782484, at \*8 (citing *Sexual Harassment*, BLACK'S LAW DICTIONARY (12th ed. 2024)). He then granted a motion to compel arbitration because a plaintiff invoking the EFAA had "not alleged any facts describing sexually charged behavior." *Id.*

Only one judge in this district, Judge Woods, has thus far expressly rejected this reasoning.[4] In *Owens v. PriceWaterHouseCoopers LLC*, Judge Woods determined that materials

---

[4] Judge Carter's opinion in *Brazzano v. Thompson Hine LLP* does not specifically discuss whether sexual harassment requires "romantic, sexual, or lewd" conduct, but does note that certain remarks at issue in the case were "lewd" and "refer[red] to a sexual act." No. 24-CV-01420 (ALC)(HKP), 2025 WL 963114, at \*7 (S.D.N.Y Mar. 31, 2025). Judge Abram's opinion in *Delo v. Paul Taylor Dance Foundation, Inc.* likewise did not discuss this issue. 685 F. Supp. 3d 173 (S.D.N.Y. 2023). Nevertheless, both Judge Oetken and Judge Woods cited *Delo* as consistent with their respective

from the New York City Commission on Human Rights offered numerous examples of "sexual harassment" that were not sexually charged or lewd.  786 F. Supp. 3d 831, 846 (S.D.N.Y. 2025).  Guidance on its website, for example, stated that "sexual harassment includes 'unwanted touching' with no qualifier about whether the touching must be sexual in nature." *Id.*  And notice posters providing examples of sexual harassment included "sexist remarks or derogatory comments based on gender" as sexual harassment, which Judge Woods reasoned "does not necessarily imply lewd or sexual conduct." *Id.*  Accordingly, he held that "under the NYCHRL, conduct constituting sexual harassment is unwelcome verbal or physical behavior based on a person's gender, regardless of whether that behavior is lewd or sexual in nature." *Id.*; *see id.* ("To the extent that *Singh* requires that a plaintiff allege romantic, sexual, or lewd conduct to allege conduct constituting sexual harassment, the Court departs from *Singh*.").

The Court agrees with Judge Woods.  Guidance from the New York City Commission on Human Rights (the agency charged with enforcing the NYCHRL) includes numerous examples of "sexual harassment" that lack lewd or sexual conduct.  *See Owens*, 786 F. Supp. 3d at 845–46.  Furthermore, defining sexual harassment as unwanted verbal or physical behavior based on gender, regardless of whether it is "romantic, sexual, or lewd," better comports with the New York courts' instructions that the NYCHRL should be given the broadest possible interpretation.  *See Williams*, 61 A.D.3d at 75; *Newson v. Vivaldi Real Estate Ltd.*, 235 A.D.3d 147, 152 (1st Dep't 2025) ("The legislative history of the Restoration Act and precedent contemplates that the [NYCHRL] be independently construed with the aim of making it the most progressive in the

---

positions. *Compare Singh*, 2024 WL 4635482, at *2 (highlighting that *Delo* involved an allegation of a boss "reach[ing] across the employee's body while she was pumping breast milk at her desk"), *with Owens*, 786 F. Supp. 3d at 847 (citing *Delo* as an example of a decision from this district "that conduct constituting sexual harassment is adequately alleged even if little to none of the harassing conduct alleged is lewd or sexual").

nation.").[5]  Therefore, for the reasons explained in Judge Woods' opinion, the Court holds that "sexual harassment" under the NYCHRL refers to unwanted verbal or physical behavior based on gender, even if such behavior is not of a "romantic, lewd, or sexual nature." *See Owens*, 786 F. Supp. 3d at 845–46.

In summary, a plaintiff may invoke the EFAA to avoid a mandatory arbitration provision by *plausibly* alleging a claim of sexual harassment or sexual assault under an applicable law, which a court assesses by applying the familiar *Twombly-Iqbal* standard.  To allege "sexual harassment" under the NYCHRL, a plaintiff need only allege unwanted physical or verbal behavior based on gender, not that such behavior also be of a "romantic, lewd, or sexual" nature. At the juncture of these two principles, a court analyzing a plaintiff's invocation of the EFAA must draw all inferences in a plaintiff's favor when assessing whether his or her complaint alleges the requisite unwanted physical or verbal conduct based on gender proscribed by the NYCHRL.  *See Albunio v. City of N.Y.*, 16 N.Y.3d 472, 477 (2011) (recognizing that courts must construe NYCHRL claims "broadly in favor of discrimination plaintiffs"); *Koch*, 699 F.3d at 145 (describing the standard deriving from *Twombly* and *Iqbal*).

---

[5] Judge Woods also highlighted that a sexual harassment claim under Title VII may proceed under a hostile work environment theory even if a plaintiff does not allege sexually charged conduct. *Id.* at 847.  Because the NYCHRL can never be more restrictive than Title VII, Judge Woods reasoned, sexual harassment under the NYCHRL cannot be read to require "romantic, sexual, or lewd" conduct. *Id.* The Court agrees with this reasoning, as well. *See Olivier v. Stifle, Nicolaus & Co., Inc.*, 112 F.4th 74, 88 (2d Cir. 2024) (affirming that a plaintiff may plead sexual harassment under the NYCHRL by alleging either quid pro quo or hostile work environment); *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (describing the elements of a Title VII hostile work environment claim, which do not include "romantic, sexual, or lewd" conduct); *Mihalik v. Credit Agricole Cheuvreux N.A., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (explaining that the federal civil rights statutes provide a "floor" under which the NYCHRL cannot fall).  This also provides an answer, if one is needed, to the concern that the EFAA is not intended to eliminate arbitration for all gender-based discrimination. *See Singh II*, 2024 WL 4635482, at *2.

**C. Has Toomey Plausibly Alleged Sexual Harassment under the NYCHRL?**

Having resolved what standard to apply and what it means to allege "sexual harassment" under the NYCHRL, the Court now turns to whether Toomey has plausibly alleged "sexual harassment" under that statute. If so, then the arbitration agreement is unenforceable regarding the entire case. *Diaz-Roa*, 757 F. Supp. 3d at 532; *Lambert v. New Start Capital LLC*, 799 F. Supp. 3d 258, 283 (S.D.N.Y. 2025).

Drawing all inferences in Toomey's favor, as required at this stage of the case, Toomey has plausibly alleged a claim of sexual harassment under the NYCHRL. O'Connell and Porreca levied derogatory comments at Toomey targeting her appearance and makeup.[6] Compl. ¶¶ 55–58. O'Connell berated Toomey in gendered terms, calling her a "bitch." *Id.* ¶¶ 2, 47; *see Davis v. City of New York*, No. 09 CV 669 HB, 2010 WL 3895578, at *3 (S.D.N.Y. Oct. 5, 2010) ("While the use of the word 'bitch' often reflects an intensely degrading hostility towards women, it is for the trier of fact to determine whether in a particular instance such remarks evidenced gender animus."). And Cashin subjected her to unwanted gender-based physical and verbal conduct. For example, Cashin would periodically ask her, "don't we prefer skinny EAs over fat EAs?" Compl. ¶ 2. All the EAs referenced in the complaint, including Toomey, are women. These comments are reasonably construed as expressing a preference regarding women's, including Toomey's, appearance, drawing on highly-gendered expectations about women's bodies and that women in the workplace be physically attractive to be valued. Cashin also expressed views about women being better suited for "unintellectual jobs" and repeatedly touched Toomey's shoulder while she was seated at her desk, in a manner that made her feel

---

[6] Of course, many of these comments were also related to racial, ethnic, or national origin stereotypes or slurs. The Court does not address those issues here.

13

uncomfortable. *Id.*; *see Shkoza v. NYC Health and Hosps. Corp.*, No. 20-CV-03646 (RA), 2021 WL 4340787, at *5 (S.D.N.Y. Sept. 22, 2021) (noting that an incident of unwanted shoulder touching could plausibly state a hostile work environment claim under the NYCHRL when viewed in the context of other conduct evincing employer's negative attitudes towards the role of women in the workplace). Examining the totality of the circumstances, the Complaint plausibly alleges sexual harassment under the NYCHRL, at this stage of the case, because it describes numerous instances of unwanted physical and verbal conduct aimed at Toomey based on her gender. Therefore, the Court will deny OEP's motion to compel arbitration.

## II.    OEP'S MOTION TO DISMISS IS DENIED

OEP has also moved to dismiss Count Three of the complaint, alleging sex discrimination under the NYSHRL, and Count Six, alleging sex discrimination under the NYCHRL. The Court has already determined that Toomey plausibly alleged sexual harassment under the NYCHRL, therefore the portion of OEP's motion to seeking to dismiss Count Six is denied for the same reasons.

Moving on to Toomey's NYSHRL claim, the NYSHRL prohibits an employer from "subject[ing] an individual to inferior terms, conditions or privileges of employment" based on "gender identity or expression." N.Y. Exec. L. § 296(h). A court reviews the totality of the circumstances when assessing a NYSHRL claim. *Moazzaz v. MetLife, Inc.*, No. 19-CV-10531 (JPO), 2021 WL 827648, at *9 (S.D.N.Y Mar. 4, 2021). Historically, the NYSHRL was more "demanding" of plaintiffs than the NYCHRL, and courts analyzed hostile work environment claims under the NYSHRL under the same framework as Title VII hostile work environment claims. *See Rothbein v. City of New York*, No. 18-CV-05106, 2019 WL 977878, at *12 (S.D.N.Y. Feb. 28, 2019). That changed in 2019 when the New York State legislature amended

the NYSHRL, making its standards more similar to the NYCHRL's. How *much* more similar is an open question. The case law "has not definitively resolved whether the effect of the 2019 amendment is to make the NYSHRL's standard *identical* to that of the NYCHRL—or merely closer to it." *Acosta v. Kennedy Children's Ctr.*, No. 24-CV-03358 (PAE), 2025 WL 70141, at *8 n.6 (S.D.N.Y. Jan. 10, 2025).

Regardless, even before the 2019 amendment, courts have recognized that the NYSHRL demands an "extraordinarily sensitive and comprehensive analysis . . . to assess a total set of workplace circumstances and determine whether a particular set of words and actions were enough to make that workplace a different, less tolerable environment for the victimized party." *Moazzaz*, 2021 WL 827648, at *9 (quoting *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 259 (S.D.N.Y 2014)). Such claims are "particularly ill-suited to dismissal at the pleading stage." *Id.* (quoting *Torres v. New York Med. Hosp.*, No. 15-CV-01264, 2016 WL 3561705, at *9 (E.D.N.Y Jan. 7, 2016)).

In its motion, OEP does not distinguish between "sex discrimination" under the NYCHRL and NYSHRL. *See* Mot. at 5–11. Therefore, assuming that the NYSHRL is identical to the NYCHRL, OEP's motion to dismiss Count Three is likewise denied for the reasons discussed *supra* Pt. I(C). Even if the Court construed the NYSHRL as setting a standard similar but not identical to the NYCHRL, it would still deny the motion to dismiss. Toomey's complaint is replete with allegations describing a hostile work environment based, at least in part, on gender. O'Connell and Porreca prosecuted an extended campaign to bully and intimidate Toomey, with apparent impunity from management. Their tactics often involved gender-based barbs, criticizing Toomey's appearance and choice of makeup or referring to her as a "bitch." Compl. ¶¶ 2, 47. This behavior occurred alongside Cashin's various gender-based or gender-

disparaging remarks and unwanted touching of Toomey, described in detail above, as well as Belinfanti's "rules" treating female and male staff differently, and other managers' inaction or active discouragement when Toomey sought to complain about O'Connell and Porreca's treatment. *Id.*; *see Duverny v. Hercules Med. P.C.*, No. 18-CV-07652 (DLC), 2020 WL 1033048, at *11 (S.D.N.Y. Mar. 3, 2020) ("Even a lone comment that is patently discriminatory or 'signal[s] views about the role of [the protected class] in the workplace' can create a hostile work environment."); *Shkoza*, 2021 WL 4340787, at *5 (noting that an incident of unwanted shoulder touching could plausibly state a hostile work environment claim under the NYCHRL when viewed in the context of other conduct evincing employer's negative attitudes towards the role of women in the workplace). Looking at the totality of the circumstances, and drawing all inferences in Toomey's favor, the above states a claim for sex discrimination under the NYSHRL at the motion to dismiss stage.

## CONCLUSION

For the foregoing reasons, OEP's motion to compel arbitration and dismiss Counts Three and Six of the complaint is DENIED.

Dated: February 18, 2026
      New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge